The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence or to receive further evidence, but good ground was shown to amend the Opinion and Award.
A Pre-Trial Agreement was entered into between the parties by which the parties stipulated that the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act; an employment relationship existed between plaintiff-employee and the defendant-employer; the defendant-employer was insured and Riscorp of North Carolina was the compensation carrier on the risk; plaintiff's average weekly wage was $263.19, which yields a compensation rate of $175.47 per week..
* * * * * * * * * * *
Based upon all of the competent evidence in the case the Full Commission makes the following
FINDINGS OF FACT
1. From mid-April 1989 through June 21, 1994, plaintiff was employed by the defendant-employer as a jacket loader in the company's microfilming process. The company microfilmed medical reports for storage.
2. The position of jacket loader required plaintiff to insert strips of film into jackets. As part of the process, plaintiff was required to examine the film and thread it through a viewer to inspect the image in order to determine if any defects had occurred in the filming process. The threading and viewing of the film required plaintiff to perform twisting motions with her hands in connection with her turning of knobs and of other parts of the machinery and equipment in question. Plaintiff was required to load the strips of film into jackets and the entire process involved constant movements of plaintiff's hands, arms and wrists and the twisting and turning of her hands and wrists.
3. Plaintiff had other health problems including insulin dependent diabetes, hypertension, hypothyroidism, severe chronic fatigue syndrome, depression, morbid obesity, mild peripheral vascular disease, significant polymorphic diabetic neuropathy, moderately severe fibromyalgia and other problems. With regard to the chronic fatigue syndrome, this caused plaintiff's severe problems in May and the first part of June of 1994 and it was making it difficult for her to continue with her work at Bowman Enterprises. In addition, she was hospitalized in June 1994 for treatment of her uncontrolled diabetes and, as a result of that condition, she was out of work for over a week that month.
4. Following that hospitalization, plaintiff returned to work on June 21 and, while she was working that day, developed numbness in both of her hands, beginning first with her right hand. She continued working after that date until she saw Dr. Vyas, her internist, on July 14, 1994 for multiple complaints related to her other medical problems as well as numbness and tingling of her hands and pain in her knuckles. Dr. Vyas took her out of work at that time due to her chronic fatigue problem. He continued to treat her during the next several months for other health conditions but on December 9, 1994 she complained of bilateral hand pain. Dr. Vyas then referred her to Dr. Bevin, a hand surgeon.
5. Dr. Bevin examined plaintiff on January 17, 1995 and diagnosed her condition as carpal tunnel syndrome. He subsequently performed surgery on both of her hands.
6. Plaintiff has alleged that the carpal tunnel syndrome for which she was treated by Dr. Vyas and Dr. Bevin resulted from the hand movements involved in her job with defendant-employer. However, the only medical evidence supporting her position came from Dr. Vyas, an internist who expressed the opinion that carpal tunnel syndrome is always caused by repetitive motion. This view was discredited by Dr. Moon who specializes in occupational medicine and who is on the faculty at Duke Medical Center. Carpal tunnel syndrome can be caused by a number of factors, including diabetes and obesity which were existing conditions in plaintiff. In fact, plaintiff's diabetes, which had been uncontrolled to the point that she had required hospitalization immediately before the first onset of her symptoms, was the more likely cause of her carpal tunnel syndrome.
7. Although plaintiff has developed carpal tunnel syndrome, a condition which can be associated with repetitive hand motion, her employment with defendant-employer was not a significant contributing factor in the development of her condition. Rather, it was caused by her diabetes. Furthermore, the hand movements required by her job duties did not place her at an increased risk of developing carpal tunnel syndrome as compared to the general public not so employed.
8. Plaintiff has not proven that she developed an occupational disease which was due to causes and conditions characteristic of and peculiar to her employment with defendant-employer and which excluded all ordinary diseases of life to which the general public was equally exposed.
* * * * * * * * * * *
Based on the foregoing stipulations and findings of fact, the undersigned make the following
CONCLUSIONS OF LAW
1. Plaintiff's carpal tunnel syndrome was not an occupational disease which was due to causes and conditions characteristic of and peculiar to her employment with defendant-employer and which excluded all ordinary diseases of life to which the general public was equally exposed. G.S. § 97-53
(13); Booker v. Duke Medical Center, 297 N.C. 458 (1979).
2. Plaintiff is not entitled to benefits under the Workers' Compensation Act for her carpal tunnel syndrome. G.S. § 97-2 etseq.
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enter the following
AWARD
1. Plaintiff's claim for workers' compensation benefits is HEREBY DENIED.
2. Each side shall pay its own costs.
This ___ day of August, 1997.
 S/ ____________________ MORGAN S. CHAPMAN DEPUTY COMMISSIONER
CONCURRING:
S/ ___________________ HOWARD J. BUNN, JR. CHAIRMAN
S/ ___________________ COY M. VANCE COMMISSIONER
MSC:ib